UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15cv31-FDW

| | |
|---|---|
| NATHANIEL LEE JOYNER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SUSAN WHITE, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court upon Petitioner Nathaniel Lee Joyner's pro se Petition for Writ of Habeas Corpus, 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 7.)

## I.   BACKGROUND

Petitioner is a prisoner of the State of North Carolina who was convicted by a jury on February 23, 2012, in the Superior Court of Iredell County, of breaking and/or entering ("B&E") and larceny after B&E. State v. Joyner, 745 S.E.2d 375, 2013 WL 2407219 (N.C. Ct. App. 2013) (unpublished). He subsequently pled guilty to being an habitual felon.

The North Carolina Court of Appeals summarized the State's evidence:

> [O]n the morning of 11 July 2010, Glenn Kurfees (Mr. Kurfees) was driving home from work when he saw a green pickup truck loaded with furniture parked beside a house located at 265 Old Mountain Road (the house) in Statesville. Mr. Kurfees knew the house at that address had belonged to the late Mrs. Pope, mother of Steven Pope (Mr. Pope). Mrs. Pope died in 2008 and no one had lived in the house since that time, though the house was still furnished. Mr. Pope lived within sight of the house and took care of the house. Mr. Kurfees, who also lived nearby, helped Mr. Pope maintain the grounds of the house. Mr. Kurfees did not recognize the loaded truck as one that belonged to Mr. Pope, so he drove to Mr. Pope's home to ask if anyone was supposed to be at the house. Mr. Pope told Mr. Kurfees he had not given anyone permission to take anything from the house. Mr. Kurfees called law

1

> enforcement and told Mr. Pope he would meet him at the house.
>
> When Mr. Kurfees arrived back at the house, he saw Defendant walking toward the loaded pickup truck. Mr. Kurfees asked Defendant what he was doing at the house. Defendant replied that he had paid $10.00 to someone at a salvage yard to take "whatever he wanted out of the house." Mr. Kurfees told Defendant that "Mr. Pope owned it, and there should have been nobody else selling any furniture[.]" Mr. Kurfees then told Defendant that law enforcement had been called.
>
> Soon afterwards, Iredell County Sheriff's Deputy Richard Fearing (Deputy Fearing) and Mr. Pope arrived at the house. Mr. Pope and Deputy Fearing observed wooden furniture in the truck bed. Mr. Pope identified the furniture as furniture that belonged in the house. Mr. Pope had earlier locked the house and had not given anyone the key. However, the back door had been forced open. Defendant explained that he had given $10.00 to a man named "Robert" at a salvage yard for any items Defendant wanted out of the house. Mr. Pope told Defendant, "that was my Mom and Dad's old place, and [ ] I hadn't given anybody permission to get anything out of that house." Mr. Pope told Deputy Fearing that "he was the only one that would give anyone permission to take stuff out of the house" and that he had not given anyone permission.

Id. Petitioner did not present any evidence. Id. He was sentenced to 96-125 months imprisonment. Id.

On June 4, 2013, the North Carolina Court of Appeals denied Petitioner's direct appeal, id., and on August 27, 2013, the North Carolina Supreme Court denied his petition for discretionary review ("PDR"), State v. Joyner, 747 S.E.2d 558 (N.C. 2013) (Mem). On September 15, 2014, Petitioner filed a pro se Motion for Appropriate Relief ("MAR") in the Superior Court of Iredell County. The court denied the MAR on October 17, 2014, holding that Petitioner had "set forth no probable grounds for the relief requested, either in law or in fact." (Order Den. MAR, Pet'r's Ex. No. 6 3, Doc. No. 1-5.) Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals, seeking review of the Superior Court's denial of his MAR. It was denied on January 23, 2015.

Petitioner filed his federal habeas Petition on January 30, 2015, when he signed and placed it in the prison mail system. (Pet. 16, Doc. No. 1.) Petitioner also filed a number of

exhibits. (Doc. Nos. 1-1 through 1-18.)[1]

Upon completion of an initial review of the Petition and attached documents, as required by Rule 4 of the Rules Governing Section 2254 Cases, the Court ordered Respondent to answer the Petition, and on April 15, 2015, Respondent filed a Response, Motion for Summary Judgment, and Memorandum in Support, with exhibits. (Doc. Nos. 6 through 8-4). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court provided Petitioner notice of Respondent's Motion for Summary Judgment and an opportunity to respond. (Doc. No. 9.) Petitioner did so on May 15, 2015. (Doc. No. 10.)

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir.1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

Review of Petitioner's claims that were adjudicated on their merits by the state courts is

---

[1] Petitioner did not include an exhibit list, label all of the documents in each exhibit, paginate the documents, or clearly separate one document from the next. Nevertheless, the Court has utilized the exhibits to the best of its ability.

3

limited by the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 374-91 (2000). This Court may grant habeas relief on claims of constitutional error adjudicated on their merits in state court only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by th[e United States Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." Williams, 529 U.S. at 405; Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529 U.S. at 407.). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Where, as here, the state court has issued a summary denial of a prisoner's federal claims, it is presumed to be an adjudication on the merits for § 2254(d)(1) purposes. See Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

4

absence of any indication or state-law procedural principles to the contrary."); Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000) (en banc) (reaffirming that a summary state court decision on the merits of a federal constitutional claim is an "adjudication" of the claim for purposes of § 2254(d)). Additionally, when the state court does not provide reasons for its dismissal of a petitioner's claim, the federal habeas must "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." Richter, 131 S.Ct. at 786. A petitioner has the burden of establishing that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner claims that trial counsel was ineffective for failing to investigate the circumstances of the offenses, call any witnesses, or file any motions. (Pet., supra, at 7.) Petitioner has not specified the type of motions counsel should have filed and has identified only one potential witness that he believes counsel should have located and interviewed – "Robert," the man who allegedly told Petitioner to take what he wanted from the residence. (Pet., supra.)

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 3745 (1986). In Strickland v. Washington, the Supreme Court identified two necessary components of an

5

ineffective assistance claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

When assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough to show "that the errors had some conceivable effect on the outcome of the proceeding," id. at 693, or that "it is possible a reasonable doubt might have been established if counsel acted differently," Richter, 562 U.S at 111 Instead, "Strickland asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." Id. at 111–12.

Because Petitioner cannot satisfy Strickland's prejudice prong, the Court need not assess whether he can meet the deficiency prong. See Bell v. Cone, 535 U.S. 685, 695 (2002) ("Without proof of both deficient performance and prejudice to the defense ..., it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand."

(quoting Strickland, 466 U.S. at 687)). Petitioner did no present any evidence to the state court, other than his own statement, that Robert actually existed. Furthermore, even if he could show that Robert existed, Petitioner did not provide evidence of how Robert would have testified; nor did he indicate whether there was anyone else present at the salvage yard who may have seen or overheard the alleged exchange between Robert and Petitioner. In short, Petitioner has provided no evidence to support his assertion that the outcome of the trial would have been different had counsel tried to locate Robert.

It, therefore, would not have been unreasonable for the MAR court to conclude that Petitioner failed to show that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 694. Petitioner's claim fails, and summary judgment shall be granted to Respondent.[2]

**B. Confrontation Clause & Perjury Claims**

Petitioner claims that his Confrontation Clause rights were violated because the Iredell County Sheriff's deputy who allegedly took Kurfees and Pope's written statements did not testify before the grand jury or at trial. (Pet., supra, at 8-9.) The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him." Crawford v. Washington, 541 U.S. 36, 42 (2004). In Crawford, the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who [does] not appear at trial unless he [is] unavailable to testify, and the defendant had a prior opportunity for cross-examination." 541 U.S. 36, 53-54, 68 (2004), abrogating Ohio

---

[2] In his Response to Respondent's Motion for Summary Judgment, Petitioner alleges other instances of ineffective assistance of counsel. (Doc. No. 10.) These allegations were not raised in his federal habeas Petition, and Petitioner has not moved to amend his Petition to add these or any other claims. Therefore, the Court will not consider the allegations of ineffective assistance of counsel raised for the first time on federal habeas review in Petitioner's Response to the Motion for Summary Judgment.

7

v. Roberts, 448 U.S. 56, 65–66 (1980).

At trial, Kurfees testified that he had contact with Deputy Fearing at the residence of the late Mrs. Pope, and that he wrote a statement for Fearing. (Trial Tr. 29, Doc. No. 1-7.) Kurfees identified the statement at trial, and the State introduced it into evidence without objection. (Trial Tr., supra, at 29-30.) No limiting instruction was requested or given. (Trial Tr., supra, at 30.) Kurfees then read his statement to the jury. (Trial Tr., supra, at 31.)

Pope, likewise, testified that he spoke to Fearing at the scene and wrote a statement for him. (Trial Tr., supra, at 73, 74, 81.) Pope identified the statement and read it aloud to the jury, without objection or request for a limiting instruction. (Trial Tr., supra, at 81-82.) His statement also was introduced and published to the jury without objection or limiting instruction. (Trial Tr., supra, at 100.)

On direct examination, Deputy Fearing testified that he spoke to both Kurfees and Pope at the scene and obtained statements from them. (Trial Tr., supra, at 106-07.) On cross-examination, Fearing acknowledged that it was his field training officer, Deputy Ikard, who was listed as the witness on Kurfees' written statement. (Trial Tr., supra, at 124.)

As an initial matter, the United States Supreme Court has never held that the Confrontation Clause applies to grand jury proceedings. See e.g. Gerstein v. Pugh, 420 U.S. 103, 121–22 (1975) (observing that "confrontation and cross-examination" of witnesses is unnecessary in a grand jury proceeding to determine probable cause to indict); Barber v. Page, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."). Additionally, the Confrontation Clause does not prohibit admission at trial of out-of-court statements made by witnesses who testify at trial. See Crawford, 541 U.S. at 59. Both Kurfees and Pope testified at

trial. Therefore, it would not have been unreasonable for the MAR court to conclude that the Confrontation Clause did not bar admission of their written statements regardless of whether it was Ikard or Fearing who witnessed them. Petitioner does not contend that the prosecutor attempted to introduce any out-of-court statement made by Deputy Ikard, himself. Consequently, the MAR court's rejection of Petitioner's Confrontation Clause claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. See § 2254(d).

Petitioner also claims that Deputy Fearing committed perjury when he testified at trial and before the grand jury that it was he who took Kurfees and Pope's statements. (Pet., supra, at 10.) In Napue v. Illinois, the Supreme Court held that under the due process clause of the Fourteenth Amendment, the prosecution may not knowingly use false evidence to obtain a conviction. 360 U.S. 264, 269 (1959). This applies equally to situations where the prosecutor deliberately elicits false testimony and where the prosecutor, although not soliciting false evidence, allows it to go uncorrected. Id. Due process requires a new trial, however, only if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." Id. at 271.

Here, Petitioner provides no evidence that Fearing testified falsely in front of the grand jury. Nor does he point to any evidence that Ikard, rather than Fearing obtained Pope's written statement. To the extent that Fearing's testimony that he "obtained [a] statement[ ]" from Kurfees was false because Ikard was listed as the witness on Kurfees' written statement, Petitioner does not allege that the prosecutor knew that Fearing's testimony was false. Furthermore, the MAR court reasonably could have concluded that there was no reasonable likelihood that Fearing's alleged false testimony affected the judgement of the jury. See Napue,

9

360 U.S. at 271. As noted, Fearing acknowledged on cross-examination that Ikard, and not he, was listed as the witness on Kurfees' written statement. There was evidence at trial, however, that both Ikard and Fearing were present at the scene and talked to both witnesses. Additionally, Fearing did not testify regarding anything in Kurfees' written statement. Finally, Kurfees was allowed to read his written statement to the jury, and his statement was admitted as evidence, without objection or request for a limiting instruction. In short, Petitioner has failed to demonstrate that the MAR court's rejection of his perjury claims was either contrary to, or an unreasonable application of, clearly established federal law. See § 2254(d).[3]

### C. Newly Discovered Evidence

Petitioner asserts that at some point after February 23, 2012, when he began his prison sentence, he was diagnosed with "Se[vere] Spinal Stenosis and Degenerative Disc Disease." (Pet., supra, at 12.) Petitioner asserts further that prior to his diagnosis, he walked with a cane "but did not know why he was in so much pain." (Pet., supra.) Petitioner contends that this diagnosis is "newly discovered evidence" (Pet., supra), which, presumably, is relevant to whether he was physically capable of moving furniture from the Pope house onto the bed of the pickup truck.

To the extent Petitioner is asserting that he is entitled to habeas relief because newly discovered evidence shows that his convictions are factually incorrect, the Supreme Court has never held that a claim of actual innocence based on newly discovered evidence provides a ground for federal habeas relief "absent an independent constitutional violation occurring in the

---

[3] In his Response to Respondent's Motion for Summary Judgment, Petitioner alleges bias on the part of Deputy Fearing. (Doc. No. 10.) This allegation was not raised in his federal habeas Petition, and Petitioner has not moved to amend his Petition to add this or any other claim. Therefore, the Court will not consider the allegation of bias raised for the first time on federal habeas review in Petitioner's Response to the Motion for Summary Judgment.

underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Id.

"[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 404. All of the claims of constitutional error raised in the instant Petition were rejected on their merits in the state courts and have been reviewed under AEDPA on federal habeas review. Thus, Petitioner does not seek to use his claim of "actual innocence" to obtain review of an otherwise procedurally-barred constitutional claim. Consequently, the MAR court's rejection of this claim was not contrary to nor an unreasonable application of clearly established federal law. See § 2254(d).

**IT IS, THEREFORE, ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED and DENIED**;
2. Respondent's Motion for Summary Judgment (Doc. No. 7) is **GRANTED**; and
3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional

right).

**SO ORDERED.**

Signed: January 4, 2016

Frank D. Whitney
Chief United States District Judge